## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**PROPHET PAULCIN,**
**DC# W11537**

      **Plaintiff,**

**vs.**                        **Case No.:  4:10cv483-SPM-WCS**

**DUANE SPEARS, et al.,**

      **Defendants.**
_____/

## RENEWED MOTION FOR JUDGMENT
## AS A MATTER OF LAW

Defendants by and through undersigned counsel and pursuant to Rule 50(b), Federal Rules of Civil Procedure, submit the Renewed Motion for Judgment as a Matter of Law and state as follows.

### PRELIMINARY STATEMENT

Plaintiff (Paulcin), filed a Section 1983 action against seven defendants. This action arose from the application of chemical agents to Paulcin at Franklin Correctional Institution on February 26, 2008.  (Doc. 1)

In relevant part, Paulcin alleged the following:

1)      Defendant Barfield and Gilliam directed or ordered chemical agents to be applied to Paulcin for his refusal to participate in the Close Management hearing in violation of his Eighth Amendment rights. (Doc. 1, p. 4)

2)      Chemical agents were applied to him without cause and he was not allowed an adequate decontamination shower time in violation of his Eighth Amendment rights.  (Doc. 1, p. 4-5)

3)      He did not receive proper medical care. (Doc. 1, p. 5)

Summary judgment was granted in favor of former Warden Spears and former Officer Griffin.  (Doc. 51)  Five Defendants, Barfield, Gilliam, Paynter, Sims and Larkin proceeded to trial.  After a three day trial, the jury rejected the inducement claims against Barfield and Gilliam.  The jury returned a verdict against Paynter, Sims and Larkin. (Doc. 88)

The jury's findings are memorialized in the verdict form as follows:

1.      After the videotaped warning, did Mr. Paulcin yell, bang on the door or walls, or loudly kick the bed?                                                      No.

4.      Do you find that (a) after the shower, Mr. Paulcin still had a significant amount of OC on his person, (b) Mr. Paynter knew it, (c) Mr. Paynter prevented Mr. Paulcin from showering longer or cleaning up in another manner, and (d) Mr. Paynter did this for the very purpose of inflicting pain?                                                      Yes.

5.      Do you find that, (a) when Ms. Larkin examined Mr. Paulcin, he still had a significant amount of OC on his person,  (b) Ms. Larkin knew it, (c) Ms. Larkin knew or believed that if Mr. Paulcin did not clean up further he would suffer significant medical harm, and (d) Ms. Larkin had the authority to provide-- or cause others to provide—an additional shower or another manner of cleaning up but did not do so.                                                      Yes.

(Doc. 88, p. 2)

2

Paulcin suffered no significant injury and was awarded nominal damages of $33,000.  (Doc. 88, p. 3, 6)  The jury's award was a misunderstanding of the concept of nominal damages.  The Court reduced the nominal award to $1.00. (Exhibit A, p. 3)

## MEMORANDUM OF LAW

The verdict as to Defendant Paynter conjunctively required that all four elements be found including, that Paulcin had significant amount of OC on his person,  Paynter knew it, Paynter prevented further showering/cleaning up and that Paynter did it for the purpose of inflicting pain. (Doc. 88, p. 2)

As to Defendant Larkin, the conjunctively presented issues posed to the jury, included, whether at the time of the examination, did Paulcin have a significant amount of OC on his person, did Larkin know it, did Larkin believe that significant medical harm would result and did Larkin have authority for further showering or cleanup. (Id.)

Absent an affirmative finding on each of the four issues presented to the jury as to Paynter and Larkin, liability cannot exist.

After the jury's release, the Court determined that Larkin was entitled to qualified immunity.  The Court's reasoning was as follow:

MR. NEFF: I will be very brief, sir.

3

Your Honor, in fact, I don't think I need to argue very much. I will show you this,[1] and I think the medical evidence is determinative in this case, and I will just read it into the record.  When a plaintiff alleges a delayed medical treatment shows deliberate indifference, you must place verified medical evidence in the record to establish the detrimental effect of the delayed medical treatment to succeed. Delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Most importantly, self-serving statements by the plaintiff do not create a question of fact in the face of contradictory contemporaneously-created medical documents.

Here, we provided medical documentation showing the effect of the agents. We showed -- we had testimony from Nurse Larkin, showing what she said. We had medical documents from --

THE COURT: The jury, apparently, didn't believe that, is part of the problem.

MR. NEFF: Well, regardless of the testimony, the documents from -- less than two weeks later, after the transfer, had no complaints from Mr. Paulcin. His self-serving statements at this trial cannot create a question of fact in face of those documents, Your Honor.

And furthermore --

THE COURT: And that's Ms. Larkin's motion.

MR. NEFF: Well, we believe, if Ms. Larkin did nothing wrong, then how can  Captain Paynter have been determined to have done anything wrong, relying on her? It's the domino effect, Your Honor.

THE COURT: Well, that doesn't quite work. First, he left the spray on -- if there was still spray on Mr. Paulcin, he left it on there before he ever got down to medical. It is really a different question, but I understand.  Mr. Cook?

MR. COOK: Yes, your Honor. This is not a case of delayed medical treatment. This is a case of no medical treatment.

THE COURT: Tell me what you think about qualified immunity. You've got a nurse that does what she did and sees, in your view, some OC spray still on him, but he's had a shower. So it's not quite the case that we talked about at the end of the plaintiff's evidence. It's a case where he had treatment. He had a shower.

MR. COOK: Your Honor, I think that it's the law of this circuit, and I don't have a case on point, but an Eighth Amendment violation is at a level that never

---

[1]  Referring to <u>Whitehead v. Burnside</u>, 403 Fed. Appx. 401, 2010 WL 4629001 (11th Cir. 2010)(Brackets inserted)

gets qualified immunity. If you reach the Eighth Amendment level, you don't have qualified immunity by definition.

THE COURT: That's flat wrong. That's just flat wrong.  If there is a case that says that, it's in the context of a legal issue, rather than a factual issue, how much stuff is on him, and under what circumstances does he need more care.

But aside from that, you would have to find the case.  And it wouldn't be the first time, I suppose, that I said some decision was flat wrong; but, if there is a case that says an Eighth Amendment violation is not subject to a qualified immunity defense --

MR. COOK: The case --

THE COURT: -- I will follow it as I always do, but I think it's flat wrong.

MR. COOK: The case is -- I think it's a use-of-force case, but Eighth Amendment.

THE COURT: I understand. That was debated for a while, but that's a different situation.

There are certainly kinds of claims where, to establish liability, one has to establish circumstances that are inconsistent with qualified immunity. And there was a debate at one time about whether excessive force was one of those. But that's different from a failure to render medical care.

Here's where I'm going to leave it with Ms. Larkin:

I'm going to grant the motion for judgment as a matter of law. If you have the case, and you think I'm wrong about that, move to alter or amend.  I have the case under advisement with respect to Mr. Paynter and Mr. Sims. It is likely that I will deny that motion. I'll think about it a little more. Frankly, while the jury has been deliberating, I have been thinking about something else, and I try to make it a point to think about that anew when the verdict comes back. So I will think about it some more. I expect that I will deny that motion and direct the entry of judgment for a dollar.

Larkin's testimony was clear and unequivocal that Paulcin had no physical injury associated with the use of chemical agents, that no visible chemical agents remained on his body, that he was in no distress and required no further treatment, including further showering.  Paulcin provided no medical evidence to refute this testimony.   His evidence of injury, pain and suffering consisted of his own testimony.   Consequently, Larkin was entitled to qualified immunity based on her

examination, treatment and diagnosis of Paulcin, and that "he had treatment…[h]e had a shower." (Exhibit A, p. 6)  The jury's conclusion that "Ms. Larkin knew that Paulcin had chemical agent on his body and believed that if Mr. Paulcin did not clean up further he would suffer significant medical harm," is unsupported by the record in this case. (Doc. 88, p. 2, #5(a),(b),(c))    Right or wrong, Larkin's actions do not rise to the level of a constitutional violation.  At the very most, Paulcin demonstrated mere negligence.

Paynter relied upon Larkin.  If Larkin found no reason for further showering, Paynter certainly cannot be held to a higher standard than her in medical matters outside of his scope and function.  If Larkin is not liable based on the unrefuted record that she provided medical treatment and that no further treatment including showering was necessary, then certainly Paynter cannot be charged with knowledge that Paulcin still had chemical agents on him and was in need of and prevented him from further showering. (Doc. 88, p. 2, #4(b),(c))

Even if the video record reflects Paulcin's claim to Paynter that he still had chemical agents on him, the subsequent medical examination supports Paynter's actions in disallowing further showering.  Prison officials are not required to believe an inmate's claim of a medical condition over a contrary determination by health care professionals. Clay v. Stacks,  2006 WL 688999, 14 (E.D.Tex.,2006) (*Staff did not unreasonably require inmate to walk absent any medical*

*prohibition*); <u>Boomer v. Lewis</u>, 2009 WL 2900778, 16 (M.D.Pa.,2009)(*Prison staff were without knowledge of a substantial risk of harm to inmate collaterally exposed to chemical agents absent a contrary medical determination*).

## CONCLUSION

Accordingly, it is requested that notwithstanding the jury's verdict, the Court enter judgment in favor of Paynter as a matter of law.

**PAMELA JO BONDI**

**ATTORNEY GENERAL**
<u>s/Mark J. Hiers</u>
MARK J. HIERS
Florida Bar No.: 0992712
Assistant Attorney General
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
mark.hiers@myfloridalegal.com
Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically through the court's CM/ECF system to counsel of record on this 17th day of November, 2011.

<u>s/ Mark J. Hiers</u>

Mark J. Hiers