UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PROPHET PAULCIN,            )
                            )
        Plaintiff,          ) Case No: 4:10-cv-483/RH
                            )
vs.                         ) Tallahassee, Florida
                            ) October 20, 2011
KENNETH PAYNTER, JOHN       )
BARFIELD, TERESA L. GILLIAM,)
TERRANCE SIMS, and JENNIFER )
LARKIN,                     )
                            )
        Defendants.         )
_____)

**TRANSCRIPT OF EXCERPT OF FOURTH DAY OF TRIAL
BEFORE THE HONORABLE ROBERT L. HINKLE,
UNITED STATES DISTRICT JUDGE, and a jury**

APPEARANCES:

For the Plaintiff:      James V. Cook, P.A.
                        By: JAMES V. COOK
                            Attorney at Law
                            cookjv@nettally.com
                        314 Jefferson Street
                        Tallahassee, Florida   32301
                            -and-
                        Carruthers Law Group
                        By: SCOTT H. CARRUTHERS
                            Attorney at Law
                            scotthcarruthers@aol.com
                        6500 Miccosukee Road
                        Tallahassee, Florida   32309



*JUDY A. NOLTON, RMR, FCRR*
Official United States Court Reporter
111 North Adams Street * Tallahassee, Florida  32301-7717
(850) 561-6822 * judynolton@comcast.net


EXHIBIT A

APPEARANCES:   (Continued)

For the Defendant:          Pamela Jo Bondi,
                            Attorney General
                            By: MARK J. HIERS
                                Assistant Attorney General
                                _mark.hiers@myfloridalegal.com_
                            Office of the Attorney General
                            The Capitol, Suite PL-01
                            Tallahassee, Florida   32399-1050
                                     -and-
                            Pamela Jo Bondi,
                            Attorney General
                            By:  LANCE E. NEFF
                                Assistant Attorney General
                                _lance.neff@myfloridalegal.com_
                            107 West Gaines Street, Suite 501
                            Tallahassee, Florida   32399

```
 1                    *   *   *   *   *   *   *   *
 2        (The jury exited the courtroom at 1:53 p.m.)
 3              THE COURT:  You may be seated.
 4              The verdict is in favor of Mr. Paulcin against the
 5   defendants Mr. Paynter, Mr. Sims, and Ms. Larkin.  The verdict
 6   is in favor of Mr. Barfield and Ms. Gilliam.
 7              The amount of the verdict is $33,000, which plainly
 8   is contrary to the law, is it not, Mr. Cook?  Shouldn't that
 9   be made into a judgment of one dollar?
10              MR. COOK:  Well, Your Honor, it's inconsistent.
11              THE COURT:  And the time to raise the inconsistency
12   was before that jury walked out the door.  So you've waived
13   the inconsistency in the verdict.
14              MR. COOK:  Yes, sir.
15              THE COURT:  But if it was -- but, plainly, in light
16   of the answer to Question 6, the only amount of damages that
17   can be awarded is nominal damages, right?
18              MR. COOK:  Nominal.
19              THE COURT:  And I'll say this:
20              I don't think there's any reason to think that the
21   verdict is inconsistent.  I think what the verdict reflects is
22   a misunderstanding on whether a nominal damage award -- that
23   is, an award made in the absence of a significant physical
24   injury -- could be more than a dollar or the like.  So I think
25   the fully consistent explanation is that the jury found that
```

```
 1  there was no significant physical injury, and I think the jury
 2  found that there is $33,000 in emotional damages.  Obviously,
 3  that's not nominal damages, and what the United States
 4  Congress said was, in the absence of physical injury, you
 5  cannot get emotional damages.  So I think it's not an
 6  inconsistent verdict.  It is an answer to the last question
 7  that is contrary to law.
 8           Now, I have under advisement a motion for judgment as
 9  a matter of law.  Does either side want to be heard on this?
10           MR. NEFF:  Yes, sir, I would like to.
11           THE COURT:  I've got another trial starting back in
12  seven minutes, so hit the high points.
13           MR. NEFF:  I will be very brief, sir.
14           Your Honor, in fact, I don't think I need to argue
15  very much.  I will show you this, and I think the medical
16  evidence is determinative in this case, and I will just read
17  it into the record.
18           When a plaintiff alleges a delayed medical treatment
19  shows deliberate indifference, you must place verified medical
20  evidence in the record to establish the detrimental effect of
21  the delayed medical treatment to succeed.  Delay in medical
22  treatment must be interpreted in the context of the
23  seriousness of the medical need, deciding whether the delay
24  worsened the medical condition, and considering the reason for
25  delay.
```

```
 1        Most importantly, self-serving statements by the
 2   plaintiff do not create a question of fact in the face of
 3   contradictory contemporaneously-created medical documents.
 4        Here, we provided medical documentation showing the
 5   effect of the agents.  We showed -- we had testimony from
 6   Nurse Larkin, showing what she said.  We had medical documents
 7   from --
 8        THE COURT:  The jury, apparently, didn't believe
 9   that, is part of the problem.
10        MR. NEFF:  Well, regardless of the testimony, the
11   documents from -- less than two weeks later, after the
12   transfer, had no complaints from Mr. Paulcin.  His
13   self-serving statements at this trial cannot create a question
14   of fact in face of those documents, Your Honor.
15        And furthermore --
16        THE COURT:  And that's Ms. Larkin's motion.
17        MR. NEFF:  Well, we believe, if Ms. Larkin did
18   nothing wrong, then how can Captain Paynter have been
19   determined to have done anything wrong, relying on her?  It's
20   the domino effect, Your Honor.
21        THE COURT:  Well, that doesn't quite work.  First, he
22   left the spray on -- if there was still spray on Mr. Paulcin,
23   he left it on there before he ever got down to medical.  It is
24   really a different question, but I understand.
25        Mr. Cook?
```

```
 1         MR. COOK:  Yes, Your Honor.  This is not a case of
 2  delayed medical treatment.  This is a case of no medical
 3  treatment.
 4         THE COURT:  Tell me what you think about qualified
 5  immunity.  You've got a nurse that does what she did and sees,
 6  in your view, some OC spray still on him, but he's had a
 7  shower.  So it's not quite the case that we talked about at
 8  the end of the plaintiff's evidence.  It's a case where he had
 9  treatment.  He had a shower.
10         MR. COOK:  Your Honor, I think that it's the law of
11  this circuit, and I don't have a case on point, but an Eighth
12  Amendment violation is at a level that never gets qualified
13  immunity.  If you reach the Eighth Amendment level, you don't
14  have qualified immunity by definition.
15         THE COURT:  That's flat wrong.  That's just flat
16  wrong.
17         If there is a case that says that, it's in the
18  context of a legal issue, rather than a factual issue, how
19  much stuff is on him, and under what circumstances does he
20  need more care.
21         But aside from that, you would have to find the case.
22  And it wouldn't be the first time, I suppose, that I said some
23  decision was flat wrong; but, if there is a case that says an
24  Eighth Amendment violation is not subject to a qualified
25  immunity defense --
```

```
 1              MR. COOK:  The case --
 2              THE COURT:  -- I will follow it as I always do, but I
 3   think it's flat wrong.
 4              MR. COOK:  The case is -- I think it's a use-of-force
 5   case, but Eighth Amendment.
 6              THE COURT:  I understand.  That was debated for a
 7   while, but that's a different situation.
 8              There are certainly kinds of claims where, to
 9   establish liability, one has to establish circumstances that
10   are inconsistent with qualified immunity.  And there was a
11   debate at one time about whether excessive force was one of
12   those.  But that's different from a failure to render medical
13   care.
14              Here's where I'm going to leave it with Ms. Larkin:
15              I'm going to grant the motion for judgment as a
16   matter of law.  If you have the case, and you think I'm wrong
17   about that, move to alter or amend.
18              I have the case under advisement with respect to
19   Mr. Paynter and Mr. Sims.  It is likely that I will deny that
20   motion.  I'll think about it a little more.  Frankly, while
21   the jury has been deliberating, I have been thinking about
22   something else, and I try to make it a point to think about
23   that anew when the verdict comes back.  So I will think about
24   it some more.  I expect that I will deny that motion and
25   direct the entry of judgment for a dollar.
```

```
 1          I try always to make this announcement when I get a
 2   verdict back:
 3          The time limits that apply at this point are among
 4   the strictest known to the law.  I have quite enough to do
 5   without motions.  So, if you choose not to file motions, that
 6   would be just fine.  But if you do file motions, please make
 7   sure to file them timely.  Cost motions, new trial motions,
 8   judgment as a matter of law motions, all of those have very
 9   strict time limits.  Please make sure that you comply with
10   them.  Appeal limits are very strict.  If you choose to
11   appeal, make sure you do it timely.
12          What else, if anything, do we need to do in this case
13   at this point?
14          MR. HIERS:  Nothing, Your Honor.
15          MR. COOK:  Nothing.
16          THE COURT:  Let me say to the correctional officers:
17          You have been moving Mr. Paulcin a long way every
18   day.  You've had a tough week.  I very much appreciate
19   you're -- not your case.  You're just moving a prisoner.  I
20   very much appreciate your efforts in doing that and getting
21   Mr. Paulcin to court.
22          I'm going to take a recess for -- I think I told the
23   lawyers 2:00.  I'm going to take about a one-minute break, and
24   I will be back in and start back in on the other case.  We'll
25   be in recess.
```

```
 1       (The proceedings concluded at 2:02 p.m.)

 2               *  *  *  *  *  *  *  *

 3

 4

 5

 6   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.  Any
 7   redaction of personal data identifiers pursuant to the
     Judicial Conference Policy on Privacy are noted within the
 8   transcript.

 9

10
```



```
11   _____                    11/14/2011
     Judy A. Nolton, RMR, FCRR                     Date
12   Official U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25
```